UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAYAM DELGOSHA,

        Plaintiff,

  v.

MARKWAYNE MULLIN, et al.,

        Defendants.

Case No. 26-cv-00287-TSH

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS PURSUANT TO
RULES 12(b)(1) AND 12(b)(6)**

Re: Dkt. No. 15

## I.    INTRODUCTION

Plaintiff Payam Delgosha filed suit against Defendants Kristi Noem, Pamela Jo Bondi, Joseph B. Edlow, and Kash Patel (collectively, "Defendants"), alleging Defendants violated the Administrative Procedure Act and Mandamus Act by failing to adjudicate Delgosha's Application for Naturalization. ECF No. 1. Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 15 ("Mot."). For the reasons stated below, the Court **DENIES** the motion.[1]

## II.    BACKGROUND

### A.    Factual Background

Delgosha, an Iranian citizen who resides in Berkeley, California, is a Lawful Permanent Resident ("LPR") of the United States. Compl. ¶ 10 (ECF No. 1). He sued Defendant Kristi Noem in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS"). *Id.* ¶ 12. Noem delegated her authority to adjudicate Form N-400, Application for Naturalization, to U.S. Citizenship and Immigration Services ("USCIS"). *Id.* Plaintiff sued

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 8, 11.

Defendant Pamela Jo Bondi in her official capacity as the U.S. Attorney General. *Id.* ¶ 14. The Attorney General oversees the Department of Justice and is responsible for directing the Federal Bureau of Investigation ("FBI"). *Id.*[2] Defendant Joseph B. Edlow is the Director of USCIS and is sued in his official capacity. *Id.* ¶ 11. Defendant Kash Patel is the Director of the FBI and is sued in his official capacity. *Id.* ¶ 13. The FBI "is the federal law enforcement agency responsible for conducting the background checks that are required by USCIS in the adjudication of naturalization applications." *Id.*

Overall, Delgosha alleges Defendants violated the Administrative Procedure Act ("APA") and Mandamus Act when they (1) "unlawfully withheld or unreasonably delayed final agency action" by failing to adjudicate Delgosha's Application for Naturalization, "[d]espite the passage of a reasonable period of time"; and (2) relied on "internal agency policies and guidance" to "unlawfully suspend adjudication of" Delgosha's naturalization application. *Id.* ¶ 1. Delgosha requests the Court "compel Defendants to perform their non-discretionary duty to adjudicate [his] long-pending Application for Naturalization (Form N-400)." *Id.*

### 1.    Delgosha's Immigration History

Delgosha is a citizen of Iran who currently resides in the United States. *Id.* ¶¶ 2, 10. He obtained LPR status on December 3, 2019. *Id.* ¶ 15, Ex. B (ECF No. 1-2). Having satisfied all statutory requirements for naturalization, Delgosha filed a Form N-400, Application for Naturalization ("Form N-400"), with USCIS on September 16, 2024. *Id.* ¶ 3, Ex. B. Since filing his Form N-400, Delgosha has not received an interview notice, and his Form N-400 remains unadjudicated. *Id.* ¶¶ 15, 18.

Delgosha "has made numerous efforts to inquire" about the status of his Form N-400; he "has submitted multiple online service requests and contacted congressional representatives in an effort to obtain an update or explanation." *Id.* ¶ 16, Ex. C (ECF No. 1-3). USCIS has not provided a clear reason for the delay in adjudicating his Form N-400. *Id.* ¶ 17. Because his Form N-400 remains unadjudicated, Delgosha cannot attain "the rights and privileges accompanying

---

[2] Secretary Markwayne Mullin and Acting Attorney General Todd Blanche substituted in place of Noem and Bondi pursuant to Federal Rule of Civil Procedure 25(d).

United States District Court
Northern District of California

United States citizenship." *Id.* ¶ 19. Delgosha cannot obtain a United States passport, travel freely, vote, fully participate in civic life, hold jobs made available only to U.S. citizens, and "enjoy the stability and security attendant to citizenship." *Id.* ¶¶ 19, 27.

### 2. Delgosha's Allegations

Delgosha alleges the following in the Complaint. Delgosha "meets all the statutory and regulatory requirements for naturalization" and "is legally entitled to naturalization." *Id.* ¶ 17. Thus, under the Immigration and Nationality Act ("INA"), Defendants have a "clear, non-discretionary duty" to adjudicate his properly filed Form N-400. *Id.* ¶¶ 5, 22 (citing 8 U.S.C. §§ 1446, 1447; 8 C.F.R. §§ 335.2, 335.3)). "While the ultimate grant or denial of naturalization involves agency discretion, the duty to act—to investigate, examine, and reach a decision—is mandatory." *Id.* ¶ 22. Therefore, Defendants "do not possess discretion to refuse to act or to indefinitely delay adjudication" once "an application is properly filed and the applicant is eligible to be examined." *Id.* ¶ 31.

Delgosha filed his Form N-400 in September 2024, but Defendants have not scheduled him for an interview, issued a decision, or otherwise completed the adjudicative process. *Id.* ¶ 23. Despite his numerous inquiries with USCIS regarding his Form N-400, "Defendants have failed to provide any specific, individualized, or legally sufficient justification for the prolonged delay in adjudicating [his] application"; nor have they provided an end date. *Id.* ¶ 24. General references

> to background checks, security reviews, internal workload considerations, or agency priorities do not excuse compliance with the APA's reasonableness requirement, particularly where no statutory or regulatory deadline has been met and no end date has been provided.

*Id.* In sum, Defendants' failure to adjudicate Delgosha's Form N-400 in a reasonable period of time violates the APA and the Mandamus Act. *Id.* ¶¶ 22, 31–36 (citing 5 U.S.C. § 555(b); 28 U.S.C. § 1361)).

Even though Delgosha's Form N-400 was already subject to prolonged delay prior to December 2025, Defendants'

> continued failure to adjudicate [his] application is now based, in whole or in part, on an internal USCIS policy memorandum issued on December 2, 2025, directing adjudicative holds or heightened review

for certain categories of applications.

*Id.* ¶ 18.  To the extent Defendants rely on this internal guidance to justify continued inaction on Delgosha's Form N-400, "such reliance exceeds Defendants' statutory authority as applied to [Delgosha] and does not relieve Defendants of their non-discretionary duty to adjudicate" his Form N-400.  *Id.*  Overall, any such reliance is "in excess of statutory authority, contrary to law, and without observance of procedure required by law, in violation of" the APA.  *Id.* ¶ 25 (citing 5 U.S.C. §§ 706(2)(A), (C), (D)).  Moreover, Defendants' failure to adjudicate Delgosha's Form N-400 "frustrates the purpose of the [INA], which contemplates timely adjudication of naturalization applications so that eligible applicants may obtain the benefits and responsibilities of United States citizenship."  *Id.* ¶ 26.

**B.      Procedural Background**

On January 9, 2026, Delgosha filed suit against Defendants Kristi Noem, Pamela Jo Bondi, Joseph B. Edlow, and Kash Patel, alleging two causes of action:  (1) violation of Administrative Procedure Act; and (2) violation of Mandamus Act.  ECF No. 1 (Compl.) ¶¶ 20–36.  Delgosha seeks mandamus, declaratory, and injunctive relief.  Compl. at 11.  Specifically, Delgosha requests the Court (1) compel Defendants to complete all necessary steps required to render a final decision on Delgosha's Form N-400; (2) issue a writ of mandamus directing Defendants to perform their non-discretionary duty to adjudicate Delgosha's Form N-400 "without further unlawful delay"; (3) enjoin Defendants "from continuing to unlawfully withhold or unreasonably delay final agency action"; (4) declare unlawful Defendants' failure to adjudicate Delgosha's Form N-400 "within a reasonable time"; and (5) declare unlawful and set aside, as applied to Delgosha, "any agency policy, memorandum, or practice relied upon" by Defendants to justify their "continued failure to adjudicate" Delgosha's Form N-400.  *Id.*

On April 10, 2026, Defendants filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 15 ("Mot.").  On April 13, 2026, Delgosha filed an Opposition.  ECF No. 16 ("Opp.").  On May 1, 2026, Defendants filed a Reply.  ECF No. 17 ("Reply").

### III.    LEGAL STANDARD

**A.    12(b)(1)**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (cleaned up); *accord Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction.  The party asserting federal subject matter jurisdiction must establish standing by a preponderance of the evidence.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *Id.*; *see Gordon v. United States*, 739, F. App'x 408, 411 (9th Cir. 2018) (explaining that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction") (cleaned up).  To overcome a factual challenge, a plaintiff must "support their jurisdictional allegations with competent proof." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (cleaned up).  Further, dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.    12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted.

United States District Court
Northern District of California

*See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV.    DISCUSSION

Defendants move to dismiss both of Delgosha's claims for lack of federal subject matter jurisdiction and for failing to state a cognizable claim. Mot. at 1–2. Overall, Defendants argue that dismissal is warranted because (1) the Court "should decline to review this matter of national security"; (2) the Court "lacks subject matter jurisdiction to review" Delgosha's claims; and (3) Delgosha "fails to state a plausible delay claim." *Id.* at 5–11.

In sum, the Court concludes that it has jurisdiction over Delgosha's claims and that Delgosha alleges cognizable claims under the APA and Mandamus Act. Therefore, dismissal is not warranted.

## A.    Overview Of Relevant Immigration Law

"The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). The Court therefore first sets out background immigration law principles as relevant to Delgosha's claims regarding a noncitizen's pathway to naturalization and USCIS's Policy Memorandum.

The INA recognizes two basic classes of noncitizens: immigrant and nonimmigrant. *Toll v. Moreno*, 458 U.S. 1, 13 (1982). In general, an immigrant intends to remain in the United States permanently and a nonimmigrant comes to the United States for a temporary stay. *Lauvik v. I.N.S.*, 910 F.2d 658, 660–61 (9th Cir. 1990); *see Sanchez v. Mayorkas*, 593 U.S. 409, 411 (2021) (defining "nonimmigrant" as "a foreign national lawfully present in this country on a designated, temporary basis"). Under the INA, every noncitizen is "presumed to be an immigrant until" they establish that they are "entitled to a nonimmigrant status" under 8 U.S.C. § 1101(a)(15). 8 U.S.C. § 1184(b); *see id.* at § 1101(a)(15) (defining "immigrant" as every noncitizen who is not within

United States District Court
Northern District of California

one of the listed classes of nonimmigrants).  And while "there are no quantitative restrictions on the admission" of nonimmigrants, "there are, with few exceptions, quota limitations" for immigrants.  *Toll*, 458 U.S. at 13 n.19 (citing 8 U.S.C. § 1151(a)).

Both immigrants and nonimmigrants may obtain lawful presence in the United States through a visa.  *See Dep't of State v. Munoz*, 602 U.S. 899, 903 (2024) ("To be admitted to the United States, a noncitizen typically needs a visa."); *Gomez v. Trump*, 485 F. Supp. 3d 145, 158 (D.D.C. 2020) (describing immigrant and nonimmigrant visas); *see generally* 8 U.S.C. § 1201 ("Issuance of visas").  Noncitizens who are eligible for an immigrant visa and are authorized to live permanently in the United States may become lawful permanent residents (LPR), often known as green-card holders.  *Barton v. Barr*, 590 U.S. 222, 227 (2020); *see generally* 8 U.S.C. § 1255. The term "lawfully admitted for permanent residence" is a term of art, defined in the INA as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." *Gooch v. Clark*, 433 F.2d 74, 78–79 (9th Cir. 1970) (quoting 8 U.S.C. § 1101(a)(20)).

Under the INA, an LPR is eligible to apply for naturalization once they have continuously resided in the United States for five years.  *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 47 (2d Cir. 2022) (citing 8 U.S.C. § 1427(a)); *see* 8 U.S.C. § 1429 ("no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence"); 8 C.F.R. § 316.2 (eligibility requirements).  In addition, the LPR must reside continuously in the United States from the time they apply until they are admitted for citizenship, and they must be "a person of good moral character."  8 U.S.C. § 1427(a)). "'[N]aturalization' means the conferring of nationality of a state upon a person after birth, by any means whatsoever."  *Id.* at § 1101(a)(23).  An LPR may apply for naturalization by filing a Form N-400.  *Ye v. Holder*, No. C-09-2073-MEJ, 2010 WL 2734815, at *1 (N.D. Cal. July 12, 2010); *see generally* 8 U.S.C. § 1445; 8 C.F.R. § 334.2.

Once an application for naturalization is filed, DHS "shall conduct a personal investigation of the person applying for naturalization," and shall conduct an examination upon the applicant.  8 U.S.C. § 1446(a)–(b); *see* 8 C.F.R. §§ 335.1, 335.2.  USCIS will conduct the examination "only

United States District Court
Northern District of California

after [it] has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b). "The majority of courts refer to the 'examination' as the interview." *Litvin v. Chertoff*, 586 F. Supp. 2d 9, 10 (D. Mass. 2008). "The employee designated to conduct any such examination shall make a determination as to whether the application should be granted or denied, with reasons therefor." 8 U.S.C. § 1446(d); *see* 8 C.F.R § 316.14. If USCIS fails to adjudicate the application for naturalization within 120 days of conducting the interview, the applicant may apply to a district court "for a hearing on the matter." *Reddy v. Mueller*, 551 F. Supp. 2d 952, 953 (N.D. Cal. 2008) (citing 8 U.S.C. § 1447(b)).

On December 2, 2025, USCIS "issued Policy Memorandum ('PM') 602-0192, pausing processing of all asylum applications for people of all nationalities and pausing benefits request processing for people from countries designated 'high-risk' in Presidential Proclamation ('PP') 10949." *Abdulraheemzai v. Noem*, No. 25-cv-05098-JST, 2026 WL 1113722, at *2 (N.D. Cal. Apr. 24, 2026) (citing PM 602-0192).[3] PP 10949 fully suspends the "entry into the United States of nationals of Iran as immigrants and nonimmigrants." *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24,497, 24,499–24,500, 2025 WL 1626652 (June 4, 2025) ("PP 10949"). However, this suspension does not apply to "any lawful permanent resident of the United States." *Id.* at 24,503. Pursuant to PP 10949, PM 602-0192 places a hold on pending benefit requests—including Forms I-485, I-90, N-470, I-751, and I-131—from Iranian nationals. PM 602-0192 at 1, n.4. USCIS determined that review of these requests is necessary for noncitizens "who entered the United States on or after January 20, 2021" due to "the threat to the American people." *Id.* at 1 n.5, 2. The adjudicative hold "will remain in effect until lifted by the USCIS Director through a subsequent memorandum." *Id.* at 2–3.

---

[3] As discussed, Delgosha relies on PM 602-0192 to form the basis of some of his claims. *E.g.,* Compl. ¶ 18. Thus, the Court incorporates by reference this memorandum. *E.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also* Opp. at 4:3–11, 6:14–7:14, 8:15–10:3 (discussing PM 602-0192). PM 602-0192 is publicly available at: https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf.

**B.     APA And Mandamus Act**

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020) (cleaned up).  The Act "establishes a basic presumption of judicial review for one suffering legal wrong because of agency action." *Id.* (cleaned up).  As such, the APA permits judicial review of federal agency action where a plaintiff seeks relief other than money damages, unless a statute precludes judicial review or the challenged agency action is committed to agency discretion by law.  5 U.S.C. §§ 701, 702.  Only final agency actions are subject to judicial review.  *Id.* at § 704.  "Agency action" includes the "failure to act." *Id.* at § 551(13).

The Mandamus Act states:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.  "An order pursuant to § 1361 is available only if (1) the claim is clear and certain; (2) the official's or agency's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Plaskett v. Wormuth*, 18 F.4th 1072, 1081 (9th Cir. 2021) (cleaned up).

As a threshold matter, the Court condenses its analysis of Delgosha's APA and Mandamus Act claims into an analysis of his APA claim.  "Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [courts] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (cleaned up).  Thus, because the Court finds that Delgosha pleads a cognizable APA claim, Delgosha's alternative claim for mandamus likewise survives dismissal.  *Cf. Abdulraheemzai*, 2026 WL 1113722, at *13.

**C.     Justiciability Arguments**

Defendants argue that the Court "should decline to review the federal government's foreign-policy and national-security determinations that have affected the timeline for adjudicating [Delgosha's] naturalization application" because they are "beyond the purview of this Court."

United States District Court
Northern District of California

Mot. at 1:23–25, 5:16–7:14; *see* Reply at 1:16–3:15.  Delgosha contends that "Defendants' invocation of generalized national security concerns does not categorically bar judicial review, particularly where no individualized determination has been made and where the alleged delay predates the cited policy."  Opp. at 3:24–4:1, 6:6–7:19.

A non-justiciable controversy is one where the subject matter is inappropriate for judicial consideration.  *Baker v. Carr*, 369 U.S. 186, 198 (1962).  The Supreme Court has identified six factors which may render an issue non-justiciable:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; or (2) a lack of judicially discoverable and manageable standards for resolving it; or (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 702 (9th Cir. 1992) (citing *Baker*, 369 U.S. at 217).  These factors represent varying formulations of the political questions doctrine which "arises primarily from concerns about the separation of powers within the federal government." *Id.* at 701.  This doctrine bars "review of claims that, *regardless of how they are styled*, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion."  *Def. for Child. Int'l-Palestine v. Biden*, 107 F.4th 926, 932 (9th Cir. 2024) (citation omitted) (emphasis in original).

Here, while Defendants do not invoke the political questions doctrine by name, their arguments map on to its elements and thus sound in the doctrine.  In sum, Defendants argue that the Court should not override "an ongoing national security determination and judgment contemplated by the Director of USCIS"; that regulation of immigration policies "is entrusted to the political branches of the Federal Government, rather than the judiciary"; that "foreign-affairs decision-making relating to national security is beyond the purview of this Court"; and that the Court cannot second-guess or override "PM 602-0192, an executive determination made in furtherance of national security and governing the administration of immigration benefits."  Mot.

11

at 5:16–7:14.

The Court concludes that Delgosha's Complaint does not present non-justiciable political questions. To start, another court in this district rejected the same arguments made by Defendants in this case regarding justiciability. *See Abdulraheemzai*, 2026 WL 1113722, at *3–5 (declining to dismiss complaint because "Defendants identify no authority establishing that the Court should decline to review alleged violations of the law simply because they implicate national security concerns"); *see also Ghahrisarabi v. Noem*, No. 25-cv-08546-KAW, 2026 WL 194738, at *1 (N.D. Cal. Jan. 26, 2026) ("[R]egardless of the Policy Memorandum, the instant case is still subject to judicial review as to whether there is unreasonable delay in adjudicating [plaintiff's] application."). And Defendants cited the same cases in *Abdulraheemzai* as they do here. *Compare Abdulraheemzai*, 2026 WL 1113722, at *3–5 *with* Mot. at 5:16–7:14.

The Court agrees with the *Abdulraheemzai* court that these cases are inapposite and do not persuade the Court to abstain from adjudicating alleged violations of the APA and Mandamus Act. *Abdulraheemzai*, 2026 WL 1113722, at *5. First, none of Defendants' cited cases support the proposition that courts abstain from reaching the merits when a national security interest is implicated. Mot. at 5:17–6:2; *see Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *1 (N.D. Cal. Jan. 20, 2022) (reaching merits of claims regarding delays in processing immigrant visa applications during the Covid-19 pandemic); *Sulaiman v. Mayorkas*, No. 8:24-cv-01733-FWS-KES, 2024 WL 5410126, at *1–2 (C.D. Cal. Dec. 11, 2024) (reaching merits of defendants' request to remand case to USCIS for adjudication of naturalization application); *Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-CSK, 2024 WL 3904959, at *12–13 (E.D. Cal. Aug. 22, 2024) (reaching merits of unreasonable delay claims and finding defendants' "role in making sure visa applicants do not pose national security risks" does "not excuse defendants from their duty to adjudicate plaintiffs' immigrant visa petitions within a reasonable time"). Second, none of Defendants' cited cases stand for the proposition that courts should decline to adjudicate disputes involving immigration policies. Mot. at 6:3–13; *see Mathews v. Diaz*, 426 U.S. 67, 80 (1976) (analyzing whether statute allowing benefits to some noncitizens but not others was constitutional); *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 721–22 (D.C. Cir. 2022) (analyzing whether executive orders

12

United States District Court
Northern District of California

issued during Covid-19 pandemic regarding expulsion of noncitizens were circumscribed by INA); *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 418, 423–25 (1999) (analyzing whether Court of Appeals erred in not applying *Chevron* deference to BIA's statutory interpretation).  Third, none of Defendants' cited cases demonstrate that courts must defer *carte blanche* to any decision by the Executive Branch that touches on national security.  Mot. at 6:14–7:14; *see Dep't of Navy v. Egan*, 484 U.S. 518, 520, 527–30 (1988) (on "narrow question," holding Merit Systems Protection Board does not have authority by statute to review substance of decision regarding individual security clearance for civil employee of Navy); *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018) (declining to reach government's justiciability arguments and reviewing legality of presidential proclamation imposing entry restrictions on noncitizens); *Harisiades v. Shaughnessy*, 342 U.S. 580, 581, 583–84 (1952) (reviewing constitutionally of statute authorizing deportation of LPR because of their membership in the Communist Party).  Finally, Defendants' lone new cited case here does not move the needle.  Mot. at 6:27–7:1 (citing *Ameziane v. Obama*, 699 F.3d 488, 494 (D.C. Cir. 2012)).  In *Ameziane*, the court explained that the government does not have unfettered discretion in matters involving foreign affairs, and it is entitled to less deference in matters involving constitutional or detainee rights.  *Ameziane*, 699 F.3d at 494–95.

Moreover, Defendants fail to show that any of the political question factors are inextricably intertwined with the issues presented in this case.  *See Baker*, 369 U.S. at 217 ( "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence.").  The thrust of Defendants' argument is that the Court should not involve itself in evaluating the propriety of PM 602-0192, given the national security concerns implicated by the policy.  *See, e.g.,* Reply at 1:9–10 ("[E]xercising jurisdiction here would necessarily interfere with the government's execution of national-security priorities.")  But courts "regularly review executive action that touches on matters of national security."  *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *10 n.14 (D. Mass. Apr. 30, 2026).  And in any event, Delgosha does not challenge the substance of PM 602-0192—he "challenges Defendants' reliance on such policy to justify prolonged inaction." Opp. at 7:5–19.  As alleged in the Complaint, Defendants have not identified any specific national

security concerns that justify placing Delgosha's Form N-400 on an indefinite hold; Defendants thus fail to demonstrate that national security is even implicated in its inaction challenged by Delgosha.[4] *Id.* at 6:6–19; Compl. ¶¶ 16, 18, 24–25; *cf. Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *14 (N.D. Cal. Feb. 20, 2026).  Therefore, the Court will not abstain from adjudicating Delgosha's claims.

## D.       Jurisdictional Arguments

Defendants argue that Delgosha's claims fail for want of subject matter jurisdiction because the Court lacks jurisdiction (1) "to order accelerated adjudication"; and (2) "to review the agency's implementation of the Policy Memorandum."  Mot. at 7:15–10:3; *see* Reply at 3:16–4:17.  Delgosha contends that the Court "has subject matter jurisdiction over claims alleging unreasonable agency delay, even where no fixed statutory deadline exists."  Opp. at 3:22–24.

Here, Defendants fail to demonstrate that the Court lacks subject matter jurisdiction over this action.[5]  First, contrary to Defendants' argument, Delgosha's APA claim supplies jurisdiction over his claims.  Mot. at 7:16–8:14.  As Delgosha correctly alleges, "[s]ubject matter jurisdiction over an APA claim rests on the federal question statute, 28 U.S.C. § 1331."  *Vaz*, 33 F.4th at 1135; *see* Compl. ¶ 4 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

---

[4] Defendants respond that it does not matter that they have not identified individualized concerns regarding Delgosha because PM 602-0192 "was motived [*sic*] by national-security concerns," and it ensures "that any national-security concerns regarding individuals like [Delgosha] . . . are identified and resolved before granting them immigration benefits."  Reply at 2:7–16.  There are two problems with this argument.  First, Defendants put the cart before the horse.  At the pleadings stage, the Court looks only to the allegations in the Complaint.  And as discussed, Delgosha plausibly alleges that Defendants' reliance on PM 602-0192 is problematic because they have not identified national security concerns with Delgosha.  Second, as several courts have recognized, Defendants do not assuage any purported national security threat presented by Delgosha by delaying a decision on his Form N-400 as Delgosha has been living in the United States as an LPR since 2019.  Compl. ¶¶ 10, 15; *cf. Singh v. Still*, 470 F. Supp. 2d 1064, 1070 (N.D. Cal. 2007) ("[T]he national security interest claimed by Respondents is questionable given that Mr. Singh has been present in the United States since 1999 but the government has done nothing to challenge his presence over the past seven years."); *Varniab*, 2026 WL 485490, at *14 ("Defendants' invocation of national security concerns is even less salient in the context of Plaintiffs in this case, who have been living and working in the United States since 2023 and about whom Defendants have identified no specific national security concerns.").

[5] Because Defendants do not submit any evidence with their Motion, they launch a facial attack on jurisdiction.  Therefore, the question is whether Delgosha's Complaint is sufficient on its face to invoke federal jurisdiction, accepting all material allegations as true and construing them in Delgosha's favor.  *Warth*, 422 U.S. at 501.

United States District Court
Northern District of California

§§ 1331 and 1361."). Defendants argue that no jurisdiction exists because Delgosha challenges an action committed to agency discretion by law. Mot. at 7:26–8:14. To be sure, the APA cabins judicial review to non-discretionary agency action. 5 U.S.C. § 701(a)(2). "But the requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction." *Vaz*, 33 F.4th at 1135. Delgosha alleges that he is entitled to relief under the APA because Defendants failed to perform their duties under federal law within a reasonable time; the Court therefore has federal question jurisdiction because Delgosha's APA claim "arises under the laws of the United States." *Id.*; *see* Compl. ¶¶ 1, 5, 22, 31. As such, the Court considers Defendants' arguments regarding discretionary action below in analyzing the sufficiency of Delgosha's APA claim.

Second, Defendants cite no authority for their proposition that the Court lacks jurisdiction to review actions by the Director of USCIS, such as the implementation of PM 602-0192. Mot. at 8:15–10:3. Indeed, the purpose of the APA is to act "as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024) (citation omitted). In this case, the Court is asked to do just that. Among other things, Delgosha asks the Court to decide the legal question of whether Defendants' reliance on PM 602-0192 to justify their inaction on his Form N-400 is lawful. Compl. ¶¶ 1, 18, 25; Opp. at 7:5–24. Defendants provide no argument for why the Court cannot decide this legal question by applying its own judgment. *Loper Bright*, 603 U.S. at 391–92. Unlike in other recent immigration cases, Defendants do not attempt to invoke one of the INA's jurisdictional bars. *See, e.g., Gao v. Mullin*, No. 25-cv-01479-SVK, 2026 WL 948665, at *2–3 (N.D. Cal. Apr. 8, 2026) (invoking bar under 8 U.S.C. § 1252(a)(2)(B)); *Garcha v. DHS*, No. 25-cv-07215-TSH, 2026 WL 747457, at *8 (N.D. Cal. Mar. 17, 2026) (invoking bar under 8 U.S.C. § 1252(a)(2)(A)). Instead, Defendants' argument here amounts to much handwaving without a real jurisdictional argument; they merely repeat arguments raised elsewhere in their Motion regarding justiciability and discretionary action. *See* Mot. at 8:15–10:3 (arguing protecting immigration system "from national security threats is committed to the political branches of government" and "is particularly within [their] expertise," and "action is committed to agency discretion by law" because "there are no judicially manageable standards"). Finally,

15

Defendants spill much ink arguing that because USCIS is acting within its authority delegated by DHS pursuant to the INA, the Court cannot review its actions regarding PM 602-0192. Mot. at 6:10–7:14, 9:3–10:3. But an agency cannot deprive a district court of subject matter jurisdiction— only Congress has the power to limit federal question jurisdiction by establishing an alternative statutory scheme. *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278, 285–86 (D.C. Cir. 2022); *cf. Abdulraheemzai*, 2026 WL 1113722, at *5 ("Defendants have failed to show that this Court must or should refrain from reviewing PM 602-0192."). The Court therefore agrees with Delgosha that Defendants cannot insulate their inaction on Delgosha's Form N-400 from judicial review merely by pointing to internal agency policy. Opp. at 8:11–21.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under Rule 12(b)(1).

**E.      Sufficiency Of Claims**

Delgosha alleges that Defendants violated Sections 706(1) and 706(2) of the APA. Compl. ¶¶ 1, 18, 21–25. Defendants argue that Delgosha "fails to state a plausible delay claim" because his claims under the APA and Mandamus Act "fail as a matter of law." Mot. at 10:4–11:3; *see* Reply at 4:18–5:12. Delgosha contends that he "has plausibly alleged an unreasonable delay under well-established pleading standards." Opp. at 4:1–3.

Under the APA, "a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). This directive ensures that agencies comply with the APA's command that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Id.* at § 555(b); *see Al Otro Lado v. EOIR*, 138 F.4th 1102, 1122 (9th Cir. 2025), *cert. granted sub nom. Noem v. Al Otro Lado*, 146 S. Ct. 604 (2025) (explaining APA "requires an agency to conclude a matter presented to it within a reasonable time") (cleaned up).

The APA also directs courts to "hold unlawful and set aside" certain agency actions. 5 U.S.C. § 706(2). Specifically, agency actions that are "not in accordance with law" are unlawful and must be set aside. *Id.* at § 706(2)(A)); *see Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) ("Under the APA, a court may set aside an agency decision if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (citing 5

United States District Court
Northern District of California

U.S.C. § 706(2)(A)) (cleaned up).  As are agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  Finally, agency actions that are "without observance of procedure required by law" must be set aside.  *Id.* at § 706(2)(D).

Here, as discussed below, the Court concludes that Delgosha alleges plausible claims under both Section 706(1) and Section 706(2) of the APA.  And again, because Delgosha's APA claim survives dismissal, his alternative claim under the Mandamus Act likewise survives dismissal.  *Vaz*, 33 F.4th at 1135.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under Rule 12(b)(6).

### 1.    APA Section 706(1)

Delgosha alleges that Defendants' "prolonged inaction" in adjudicating his Form N-400 "exceeds any reasonable period contemplated by the APA and constitutes agency action unlawfully withheld or unreasonably delayed."  Compl. ¶¶ 1, 21–24.  Defendants argue that Delgosha's claim under Section 706(1) fails because (1) the processing of a Form N-400 is committed to agency discretion; and (2) Delgosha fails to plausibly allege an APA claim for unreasonable delay.  Mot. at 7:16–8:14, 10:4–11:3.

### a.    Challenged Agency Action

Defendants argue that "the timing and sequencing of adjudication" of Delgosha's Form N-400 "are committed to agency discretion" because "neither the statutes nor the regulations provide a time limitation for completing examination of naturalization applications."  Mot. at 7:16–8:14, 10:4–11:3.  Delgosha contends that his claim "arises from Defendants' failure to perform a discrete and legally required act:  adjudicating a properly filed naturalization application."  Opp. at 5:11–6:5.

Relief under the APA is only available for agency action that is not committed to agency discretion by law.  5 U.S.C. § 701(a)(2).  Specifically, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*"  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  Thus, a plaintiff can seek relief under Section 706(1) where an agency either withholds or unreasonably

United States District Court
Northern District of California

delays a non-discretionary duty. *Al Otro Lado*, 138 F.4th at 1120 (citing 5 U.S.C. § 706(1)). The two actions are distinct:

> When an action is delayed, one expects that, with the passage of time (maybe even an unreasonable amount of time), the action eventually will be completed. By contrast, when an action has been withheld, no amount of waiting can be expected to change the situation. With patience, one can wait out delay, but even with superhuman patience, one cannot wait out withholding.

*Id.* at 1122.

Here, the Court concludes that Delgosha pleads sufficient facts to plausibly allege that Defendants are unlawfully withholding a non-discretionary duty: adjudication of his Form N-400. Defendants do not dispute that the INA imposes on them a mandatory duty to adjudicate applications for naturalization. *See* Compl. ¶¶ 5, 22; 8 U.S.C. § 1446 (stating DHS "shall" investigate and examine an applicant for naturalization and "shall make a determination as to whether the application should be granted or denied, with reasons therefor"). Yet Defendants concede that Delgosha's Form N-400 "continues to be on hold" with USCIS. Mot. at 8:17–21; *see* Compl. ¶¶ 18, 23–25. And Delgosha plausibly alleges that Defendants rely on PM 602-0192 to suspend adjudication of his Form N-400 with "no end date." Compl. ¶¶ 1, 24–25, 31; *see* PM 602-0192 at 2–3 (stating adjudicative hold "will remain in effect until lifted by the USCIS Director through a subsequent memorandum"). That is the end of the analysis. "By refusing to accept a matter at all, an agency indicates that it will not 'conclude' it at any time in the future. In other words, it withholds action entirely." *Al Otro Lado*, 138 F.4th at 1122. Taking Delgosha's allegations as true, because Defendants are abdicating their duty to adjudicate Delgosha's Form N-400 (pursuant to PM 602-0192), they are withholding the action of adjudication entirely, and are violating Section 706(1). *See Vietnam Veterans of Am. v. CIA*, 811 F.3d 1068, 1079 (9th Cir. 2016) ("It is clear that section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act."); *cf. Karimi v. Mullin*, No. 5:26-cv-5049, 2026 WL 1103448, at *7 (W.D. Ark. Apr. 23, 2026) (finding plaintiff likely to succeed on unlawful withholding claim challenging PM 602-0192); *Varniab*, 2026 WL 485490, at *12 (holding defendants "do not have discretion to indefinitely and categorically delay or withhold adjudication of [adjustment of status]

18

applications"). And as Delgosha points out, this is especially salient in the context of naturalization. Withholding or unreasonably delaying adjudication of a Form N-400 is antithetical to a central purpose of the INA: "to reduce the waiting time for naturalization applicants." *United States v. Hovsepian*, 359 F.3d 1144, 1163 (9th Cir. 2004); *see* Compl. ¶ 26.

Moreover, Defendants' argument that Delgosha's claim fails because he "does not identify any statute or regulation that imposes a mandatory deadline for adjudicating naturalization applications" is unavailing. Mot. at 7:26–8:7, 10:19–28. The Ninth Circuit has squarely rejected this argument, holding that the fact that a statute does not include a specific deadline does not resolve whether an agency's failure to act constitutes withholding. *Al Otro Lado*, 138 F.4th at 1120–21. Defendants' argument that no judicially manageable standard exists "against which to judge the agency's discretion" similarly fails. Mot. at 7:26–8:7. Section 706(1) proscribes withholding required agency action—full stop. *Al Otro Lado*, 138 F.4th at 1121. Therefore, the APA provides a judicial standard.

To be sure, Defendants focus mainly on the pace that Delgosha's Form N-400 is being adjudicated and not its ultimate adjudication.[6] It is true that Delgosha alleges unreasonable delay irrespective of PM 602-0192 as his N-400 was pending before USCIS issued that memorandum. Compl. ¶¶ 1, 18, 24–25; *see* Opp. at 6:22–24 ("Defendants cannot retroactively justify pre-existing delay by invoking later-issued policy guidance."). However, at the pleadings stage, the Court need not flesh out every theory of harm. Because the Court concludes Delgosha alleges a cognizable

---

[6] Defendants lean heavily on *Lee v. Garland*, a district court case, for the proposition that the pace of adjudication for a "pre-interview" naturalization claim is discretionary. Mot. at 8:8–14, 10:23–28 (citing No. 22-cv-176 TWR(AHG), 2022 WL 14890203 (S.D. Cal. Oct. 25, 2022)); *see also* Reply at 3:22–4:17, 5:6–8. But *Lee* did not involve PM 602-0192 and did not address whether the agency withheld adjudication of plaintiff's Form N-400. *Lee* is thus inapposite here. However, the Court notes that Defendants do not grapple with the panoply of cases—going back nearly two decades—holding that claims alleging unreasonable delay of naturalization applications are cognizable. *See, e.g., Sidhu v. Chertoff*, No. 1:07-cv-1188-AWI-SMS, 2008 WL 540685, at *6 (E.D. Cal. Feb. 25, 2008) ("This court finds that the better rule permits judicial review of unreasonably delayed applications because [USCIS] has a non-discretionary duty to adjudicate an application [for naturalization]."); *Litvin*, 586 F. Supp. 2d at 10 ("This court disagrees with Defendants' interpretation and holds that the government has a nondiscretionary duty to act on applications [for naturalization] by processing them."); *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008) ("Because USCIS is required to adjudicate naturalization applications, it must do so in a reasonable amount of time.").

United States District Court
Northern District of California

claim under Section 706(1) based on a theory of unlawful withholding, Delgosha need not show at this stage that he also has a cognizable claim based on unreasonable delay. *Cf. Varniab*, 2026 WL 485490, at *16 ("Because the Court has already concluded that Plaintiffs are likely to succeed on Claim 2 under 5 U.S.C. § 706(1) on a theory of unreasonable delay, it does not further analyze their claim for unlawful withholding under that section.").

### b.    Factual Allegations

Defendants argue that Delgosha fails to meet the pleading "standard" for a Section 706(1) claim. Mot. at 10:4–10. Delgosha contends that he has "plausibly alleged unreasonable delay" and that "the delay is infinite, unexplained, and unreasonable." Opp. at 7:20–9:6.

For pleading purposes, the distinction between agency withholding and delay is important. "If an agency withholds a required action, it violates § 706(1) regardless of its reason for doing so. But if an agency delays a required action, it violates § 706(1) only if the delay is unreasonable. The reasonableness of any delay is a fact-intensive inquiry analyzed under the so-called *TRAC* factors."[7] *Al Otro Lado*, 138 F.4th at 1121 (cleaned up).

---

[7] To determine whether an agency's delay is unreasonable under the APA, courts "use the *TRAC* factors—the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*")." *Vaz*, 33 F.4th at 1137. The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Here, as discussed, the Court concludes that Delgosha plausibly alleges a Section 706(1) claim based on Defendants' refusal to adjudicate his Form N-400. Delgosha alleges that he meets all requirements for naturalization and filed his Form N-400 in September 2024; Defendants have not scheduled him for an interview, issued a decision, or otherwise completed the adjudicative process; and Defendants are relying on PM 602-0192 to delay adjudicating his Form N-400 indefinitely. Compl. ¶¶ 17–18, 23–25, 31; *see* Opp. at 7:20–9:6. An agency violates Section 706(1) when it withholds required action, irrespective of its reason for doing so. *Al Otro Lado*, 138 F.4th at 1121. Therefore, the Court agrees with Delgosha that his "allegations, taken as true, are sufficient to state a claim under the APA." Opp. at 8:5–6.

Defendants cite no authority for their assertion that Delgosha must allege facts regarding "the typical processing time for applications like his own," whether "the FBI has completed its background investigation into him," and how his Iranian citizenship relates to the "armed conflict" between Iran and the United States, to survive dismissal. Mot. at 10:10–18. Further, the Court is confused by Defendants' assertion that Delgosha must marshal evidence of the processing time for a Form N-400 to survive dismissal. *Id.* Defendants seemingly insist that Delgosha must satisfy the *TRAC* factors. But this case is not in a summary judgment posture. *Contra Vaz*, 33 F.4th at 1135, 1137–38 (holding plaintiff failed to raise a genuine dispute about whether delay was unreasonable under summary judgment standard). And in any event, the *TRAC* factors are not relevant to an unlawful withholding analysis. *Al Otro Lado*, 138 F.4th at 1121.

### 2. APA Section 706(2)

Delgosha alleges that any reliance by Defendants on PM 602-0192 to justify continued inaction on his Form N-400 is "in excess of statutory authority, contrary to law, and without observance of procedure required by law, in violation of" the APA. Compl. ¶¶ 1, 18, 25 (citing 5 U.S.C. §§ 706(2)(A), (C), (D)). In their Motion, Defendants do not explicitly cite Section 706(2). Defendants appear to raise two arguments regarding this claim: (1) Delgosha "fails to adequately plead how PM 602-0192 is unlawful under the APA as applied to him"; and (2) regarding PM

---

*Id.* (cleaned up).

602-0192, "there are no judicially manageable standards for the Court to apply to determine a remedy." Mot. at 9:18–25, 10:17–18.

Here, the Court concludes that Delgosha alleges a cognizable claim under Section 706(2). First, contrary to Defendants' argument, Delgosha plausibly alleges that PM 602-0192 is unlawful as applied to him. At a minimum, Delgosha plausibly alleges that Defendants' reliance on PM 602-0192 contravenes the INA, in violation of Section 706(2)(A). An agency acts "*ultra vires*" when it acts in excess of its statutory authority. *See Adamski v. McHugh*, 304 F. Supp. 3d 227, 236 (D.D.C. 2015) (citing *Black's Law Dictionary* 1755 (10th ed. 2014) ("Literally translated, the Latin phrase 'ultra vires' means 'beyond the powers of,' and as a legal term, the phrase means 'unauthorized' or 'beyond the scope of power allowed or granted by law.'")) (cleaned up). *Ultra vires* is often used to describe APA claims where the plaintiff contends that an agency action is not in accordance with law or in excess of statutory jurisdiction. *Id.* (citing 5 U.S.C. § 706(2)(A), (C)); *see also Nw. Envtl. Advocates v. EPA,* 537 F.3d 1006, 1014 (9th Cir. 2008) (referring to plaintiff's claims under APA sections 706(2)(A) and (C) as *ultra vires* arguments). Delgosha's claim is straightforward: the adjudicative hold policy of PM 602-0192 conflicts with the INA which requires DHS to issue a decision on his Form N-400. Compl. ¶¶ 1, 5, 18, 22–25 (citing 8 U.S.C. § 1446). As with his Section 706(1) claim, this is sufficient to state a plausible claim under Section 706(2). *Cf. Doe*, 2026 WL 1170971, at *16 (finding that under Section 706(2)(A), "plaintiffs are likely to succeed on their claim that, as applied to the plaintiffs' applications for naturalization . . . the adjudicative hold policy is not in accordance with law").

Second, Delgosha's requested remedy is governed by a judicially manageable standard— the APA. Delgosha requests the Court "declare unlawful and set aside" PM 602-0192 as applied to him. Compl. at 11. The APA directs courts to "hold unlawful and set aside" agency actions that violate Section 706(2). 5 U.S.C. § 706(2). Thus, under the APA, the Court can prevent Defendants from applying the adjudication hold of PM 602-0192 to Delgosha's Form N-400. *See Varniab*, 2026 WL 485490, at *24 (enjoining defendants from applying adjudication hold of PM 602-0192 to plaintiffs' applications). Indeed, other courts have found that requests to vacate PM 602-0192 altogether are permissible under the APA. *See Abdulraheemzai*, 2026 WL 1113722, at

United States District Court
Northern District of California

*5 ("[T]he relief Plaintiffs seek is available through a court order invalidating the PM on one or more of the grounds advanced by Plaintiffs."); *id.* at *10 ("This is the exact remedy Plaintiffs seek—vacatur of PM 602-0192, at which point USCIS may reissue a PM that complies with the APA and relevant governing statutes."). Therefore, Delgosha plausibly alleges that Defendants' action of relying on PM 602-0192 to abdicate their duty to adjudicate his Form N-400 runs contrary to the INA.

### V.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: June 18, 2026

THOMAS S. HIXSON
United States Magistrate Judge

23